**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

GLORIA J. COLLAZO, an individual,

*Plaintiff*,

v.

G6 HOSPITALITY LLC,
a Delaware limited liability company;

G6 HOSPITALITY FRANCHISING LLC,
a Delaware limited liability company;

MOTEL 6 OPERATING, L.P., Case No.: 9:26-cv-80284
a Delaware limited partnership;

MOTEL 6 LANTANA LLC,
a Florida limited liability company,
*true legal name presently unknown*,
believed to be the owner, operator, and/or
managing entity of the Motel 6 located at
1310 West Lantana Road, Lantana, Florida; and

JANE AND JOHN DOES 1-20,
individual employees, agents, and security personnel.

*Defendants.*
_______________________________________/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, GLORIA J. COLLAZO ("Plaintiff"), by and through undersigned counsel, files this Complaint against Defendants G6 HOSPITALITY LLC ("G6 Hospitality"), G6 HOSPITALITY FRANCHISING LLC ("G6 Franchising"), MOTEL 6 OPERATING, L.P. ("Motel 6 Operating"), and MOTEL 6 LANTANA LLC (true legal name presently

unknown) ("Motel 6 Lantana"), and JOHN DOES 1-20 (collectively, "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action brought pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, by a survivor of human trafficking against hotel entities that knowingly benefited from, facilitated, and participated in a sex-trafficking venture operating at their property.

2. Between approximately 2016 and 2017, Plaintiff was repeatedly subjected to sex trafficking in Palm Beach County, Florida. Plaintiff's trafficker used force, fraud, coercion, violence, drug dependency, and psychological manipulation to compel Plaintiff to engage in commercial sex acts at hotel properties, including the Motel 6 located at 1310 West Lantana Road, Lantana, Florida ("Motel 6 Lantana").

3. During this period, Defendants rented rooms to Plaintiff's trafficker and individuals acting in concert with him and thereby knowingly benefited financially from a trafficking venture conducted on their premises.

4. The trafficking activity was open and obvious and presented numerous indicators recognizable to reasonable hotel personnel, including repeated short-term room rentals paid in cash, excessive male foot traffic to rooms at all hours, visible signs of physical abuse and distress, intoxication and drug activity, and repeated interactions between hotel staff and Plaintiff's trafficker demonstrating awareness of ongoing criminal conduct.

5. Despite these clear warning signs, Defendants failed to intervene, report suspected trafficking, refuse service, enforce reasonable safety policies, or implement adequate training and procedures designed to prevent human trafficking at their property.

6. As a direct and proximate result of Defendants' conduct and omissions, Plaintiff suffered severe physical injury, psychological trauma, loss of personal liberty, economic damages, and continuing emotional distress.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. §§ 1589-1595.

8. This Court has supplemental jurisdiction over Plaintiff's related state law claims, if any, pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal claims.

9. This Court has personal jurisdiction over Defendants because, at all relevant times, Defendants conducted substantial business within the State of Florida, purposefully availed themselves of the privilege of conducting activities within this District, operated and derived revenue from hotel properties located in this District, and committed tortious acts and omissions causing injury within this District.

10. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Palm Beach County, Florida, which lies within this District.

11. Venue is further proper because the Motel 6 property that forms the basis of this action is located at 1310 West Lantana Road, Lantana, Florida, and Defendants transacted business and derived substantial revenue from activities occurring at that location.

## PARTIES

12. Plaintiff GLORIA J. COLLAZO ("Plaintiff") is an adult individual residing in Palm Beach County, Florida. At all times relevant to this action, Plaintiff was a victim of sex trafficking as defined under 18 U.S.C. § 1591.

13. Defendant G6 Hospitality LLC is a Delaware limited liability company with its principal place of business in Plano, Texas. Upon information and belief, the members of this limited liability company are citizens of states other than Florida; however, the precise identity and citizenship of those members is presently within Defendants' exclusive knowledge and will be confirmed through discovery. G6 Hospitality is the parent company responsible for the Motel 6 brand and establishes operational standards, policies, and procedures applicable to Motel 6-branded properties throughout the United States, including the property at issue in this case.

14. Defendant G6 HOSPITALITY FRANCHISING LLC ("G6 Franchising") is a Delaware limited liability company with its principal place of business in Plano, Texas. G6 Franchising franchises Motel 6 branded hotel properties and exercises substantial control over franchise operations through brand standards, required training, inspection programs, and operational requirements. Upon information and belief, the members of G6 Franchising are citizens of states other than Florida; however, the precise identity and

citizenship of those members are presently within Defendants' exclusive knowledge and will be confirmed through discovery.

15. Defendant MOTEL 6 OPERATING, L.P. ("Motel 6 Operating") is a Delaware limited partnership with its principal place of business in Plano, Texas and is involved in the ownership, management, operation, and oversight of Motel 6 branded hotel properties nationwide. Upon information and belief, the general and limited partners of Motel 6 Operating, L.P. are citizens of states other than Florida; however, the precise identity and citizenship of those partners are presently within Defendants' exclusive knowledge and will be confirmed through discovery.

16. Defendant MOTEL 6 LANTANA LLC ("Motel 6 Lantana"), a Florida limited liability company, true legal name presently unknown, is believed to be the owner, operator, and/or managing entity responsible for the Motel 6 property located at 1310 West Lantana Road, Lantana, Florida, where a substantial portion of the trafficking conduct described herein occurred.

17. Plaintiff presently lacks access to franchise, ownership, and management records identifying the precise legal entity responsible for day-to-day operations at the Motel 6 Lantana property, which information is within Defendants' exclusive possession and will be confirmed through discovery.

18. Defendants JOHN DOES 1-20 are individuals whose identities are presently unknown, including employees, managers, front desk personnel, and security staff assigned to or working at the Motel 6 Lantana property during the relevant time period, who, while acting within the course and scope of their employment, observed, participated in,

facilitated, ignored, or failed to respond to obvious indicators of sex trafficking occurring on the premises as described herein. Plaintiff cannot presently identify these individuals because their identities are within Defendants' exclusive possession and control, and will amend this Complaint to substitute their true names upon discovery.

## GENERAL FACTUAL ALLEGATIONS

### A. Plaintiff's Background and Vulnerability

19. Plaintiff is a survivor of human trafficking who, during the relevant period, was experiencing profound personal and emotional vulnerability following the sudden death of her mother in October 2015.

20. Plaintiff personally discovered her mother deceased in their shared residence, an event that caused severe emotional trauma and destabilized Plaintiff's mental health, financial stability, and living circumstances.

21. In the months following her mother's death, Plaintiff struggled with grief, depression, and substance use as she attempted to cope with the loss, leaving her increasingly isolated and susceptible to manipulation and exploitation.

22. The trafficker was introduced into Plaintiff's life in or about 2016 through a family connection during the period immediately following her mother's death and exploited Plaintiff's emotional vulnerability and isolation to gain trust and access to her home. Over time, that individual became Plaintiff's trafficker.

23. The trafficker initially presented himself as supportive and caring and gained Plaintiff's trust by offering companionship, emotional reassurance, and assistance with daily needs.

24. Over time, the trafficker ingratiated himself into Plaintiff's personal life, moved into her residence, and gradually assumed influence over her financial decisions and living arrangements.

25. By approximately March 2016, Plaintiff lost stable housing and was evicted from her apartment, after which she experienced periods of homelessness and lived on the streets and in abandoned buildings in Palm Beach County, circumstances that further increased her dependence upon the trafficker for survival.

**B. Grooming and Coercive Control**

26. After establishing emotional and financial dependence, the trafficker began exerting increasing control over Plaintiff through manipulation, intimidation, and isolation.

27. The trafficker introduced and encouraged the use of alcohol and controlled substances, which impaired Plaintiff's ability to resist his demands and increased her reliance upon him for shelter, transportation, and basic necessities.

28. The trafficker used Plaintiff's vulnerable circumstances, including her grief, homelessness, and concern for her children, to pressure and manipulate her into complying with his directives.

29. As the relationship progressed, the trafficker's conduct escalated into verbal abuse, threats, and physical violence. Plaintiff was repeatedly struck, grabbed, dragged, and physically restrained when she resisted or attempted to leave.

30. The trafficker repeatedly threatened to kill Plaintiff and dispose of her body if she attempted to leave or failed to return with money, causing Plaintiff to fear for her life and believe escape was impossible.

31. The trafficker controlled Plaintiff's movements, restricted her communications with others, and confiscated money generated from activities he directed, leaving Plaintiff without financial independence or a realistic means of escape.

**C. Escalation Into Commercial Sex Trafficking**

32. After establishing dominance and control, the trafficker began compelling Plaintiff to engage in commercial sex acts with paying individuals for his financial benefit.

33. Initially, the trafficker relied on psychological manipulation and economic pressure, telling Plaintiff that engaging in commercial sex was necessary for survival and that refusal would result in abandonment, violence, or further deprivation.

34. When Plaintiff resisted, the trafficker used physical force and intimidation to compel compliance, including assaults and threats that reinforced Plaintiff's fear and dependency.

35. Plaintiff was transported by the trafficker to various locations within Palm Beach County where commercial sex acts were arranged, and the trafficker collected and retained all proceeds from those encounters.

36. Plaintiff was frequently required to engage in multiple commercial sex acts per day while under the trafficker's supervision or control, and her ability to leave or refuse participation was restricted through violence, intimidation, and substance dependency.

37. The trafficker's violence caused significant physical injury to Plaintiff during this period, including severe beatings and injuries for which she was denied medical treatment, further reinforcing her physical and psychological captivity.

38. Plaintiff's participation in commercial sex acts was not voluntary but was the direct result of force, fraud, and coercion exercised by the trafficker.

39. During this period, the trafficker transported Plaintiff among various motel properties in Palm Beach County, including the Motel 6 Lantana, which was repeatedly used to facilitate the trafficking venture described herein.

**D. Trafficking at Motel 6 Lantana**

40. The Motel 6 located at 1310 West Lantana Road, Lantana, Florida ("Motel 6 Lantana") is a roadside hotel property situated near Interstate 95 in Palm Beach County, Florida.

41. Between approximately April 2016 and October 2017, Plaintiff was brought to Motel 6 Lantana by her trafficker on multiple occasions, estimated to be between five and fifteen separate stays.

42. Each stay typically lasted between one and five days and consisted of repeated short-term room rentals rather than extended lodging.

43. Plaintiff and, at times, other women under the trafficker's control were housed in rooms generally located toward the rear or southwest area of the property, where traffic was lighter and visibility reduced.

44. While at Motel 6 Lantana, Plaintiff was compelled to engage in commercial sex acts with numerous purchasers who arrived at the room throughout the day and night.

45. On many occasions, between approximately three and ten male purchasers per night entered and exited the room for commercial sex acts arranged by the trafficker.

46. At times, multiple women under the trafficker's control were simultaneously housed in the same room at Motel 6 Lantana and were compelled to engage in commercial sex activity, resulting in continuous traffic to and from the room that was readily observable to hotel staff and security personnel.

47. The trafficker maintained control over Plaintiff during these encounters by remaining nearby, directing the activity, collecting payments, and determining when Plaintiff could leave the room.

48. Rooms were frequently paid for in cash, and on multiple occasions, purchasers themselves rented the rooms at the trafficker's direction so that the trafficker's name would not appear on hotel records.

49. On multiple occasions, rooms were rented using identification belonging to third parties rather than the trafficker, and hotel personnel permitted these irregular rental practices to continue despite the obvious inconsistencies presented during check-in.

50. Plaintiff was often instructed to remain out of view of front desk personnel and was required to wait outside or in secluded areas until the trafficker signaled that she could enter the room.

51. During these stays, Plaintiff frequently appeared visibly injured, bruised, intoxicated, or emotionally distressed as a result of ongoing abuse and substance dependency imposed by the trafficker.

52. Plaintiff recalls an occasion in which a hotel security guard approached her while she was outside crying and asked whether she was okay; however, Plaintiff, fearing retaliation from her trafficker, returned to the room without seeking assistance.

53. Plaintiff further recalls an incident in which a hotel employee observed the trafficker forcibly grabbing and pulling her back toward a room during an argument, after which no intervention or report to law enforcement occurred.

54. Plaintiff observed the trafficker provide money to hotel security personnel on multiple occasions, after which security staff allowed activity at the room to continue without interference.

55. Throughout Plaintiff's stays at Motel 6 Lantana, there was constant foot traffic of adult males entering and leaving the room at all hours, consistent with ongoing commercial sex activity.

56. Despite the frequency of these visits, repeated short-term rentals, visible distress of occupants, and other observable indicators of trafficking, Plaintiff was never offered assistance, the trafficker was never refused service, and law enforcement was never contacted by hotel personnel.

57. Upon information and belief, and based on the repeated and open trafficking activity described above occurring without intervention, Motel 6 Lantana became known among individuals engaged in the commercial sex trade as a location where such activity could occur with minimal interference.

**E. Motel 6 Staff Knowledge and Failure to Act**

58. During Plaintiff's repeated stays at Motel 6 Lantana, numerous observable indicators of sex trafficking were present that would have alerted reasonable hotel employees, managers, and security personnel to ongoing criminal activity occurring on the premises.

59. These indicators were not isolated events but occurred repeatedly over multiple visits spanning approximately April 2016 through October 2017.

60. Hotel staff observed or reasonably should have observed an unusually high volume of short-term room rentals associated with Plaintiff's trafficker and individuals acting in concert with him, including rentals paid in cash and rooms obtained through third parties to avoid identification.

61. Throughout Plaintiff's stays, there was continuous and excessive foot traffic of adult males entering and exiting the same room at all hours of the day and night, behavior consistent with commercial sex activity and readily observable to hotel personnel responsible for monitoring the property.

62. Plaintiff frequently appeared in public areas of the hotel visibly distressed, intoxicated, and bearing signs of physical abuse, including bruising and emotional distress, conditions that were apparent to individuals working at or monitoring the premises.

63. Plaintiff recalls an occasion in which a hotel security guard approached while she was outside crying, after which the trafficker privately spoke with the guard, and the guard immediately walked away without further inquiry, assistance, or intervention.

64. On another occasion, a hotel employee observed Plaintiff's trafficker forcibly grabbing and pulling Plaintiff back toward a hotel room during an argument, yet no intervention occurred and no report to law enforcement was made.

65. Plaintiff further observed the trafficker provide money to hotel security personnel on multiple occasions, after which security personnel permitted activity at the room to continue without inquiry or interruption.

66. Hotel personnel permitted rooms to be rented without proper identification or through third parties acting at the trafficker's direction, enabling the trafficker to conceal his identity while continuing to use the property repeatedly.

67. During the relevant period, Plaintiff observed that Motel 6 Lantana was frequented by individuals openly engaging in drug-related activity and was commonly regarded among persons involved in the street-level commercial sex environment as a location where such activity occurred openly, further reinforcing the foreseeability of trafficking-related conduct at the property.

68. Despite the repeated indicators of trafficking described above, including heavy male traffic, visible abuse and distress, intoxication, irregular room rental practices, confrontational incidents, and the openly observable conditions at the property, hotel staff did not conduct welfare checks, refuse service, contact law enforcement, or take reasonable steps to prevent the ongoing exploitation occurring at Motel 6 Lantana.

69. As a result of hotel personnel's repeated failure to intervene, investigate, or implement reasonable protective measures despite the observable conditions and incidents

described above, the trafficking activity at Motel 6 Lantana continued unabated, and Plaintiff remained subjected to ongoing exploitation on the premises.

**F. Corporate Defendants' Control and Knowledge**

70. Defendants G6 Hospitality, G6 Franchising, and Motel 6 Operating (collectively, the "Corporate Defendants") exercised substantial control over the operation of Motel 6-branded properties, including Motel 6 Lantana, through franchise agreements, brand standards, operational requirements, and centralized business systems governing hotel operations.

71. At all relevant times, the Corporate Defendants required Motel 6-branded locations to comply with uniform policies and procedures concerning guest registration, room rentals, safety practices, employee training, property inspections, and reporting obligations relating to criminal or suspicious activity occurring on hotel premises.

72. The Corporate Defendants implemented centralized reservation and property management systems, brand compliance reviews, and inspection programs that allowed them to monitor performance, occupancy patterns, and operational compliance at franchised locations, including Motel 6 Lantana.

73. Through these systems and contractual rights, the Corporate Defendants retained authority to mandate corrective action, enforce operational standards, and terminate franchise or operating rights for failure to comply with brand policies and safety requirements.

74. By maintaining and enforcing these operational controls while sharing in revenue derived from room rentals, the Corporate Defendants possessed the practical

ability to prevent, detect, and respond to unlawful activity occurring at Motel 6 Lantana, including sex trafficking. Through their brand standards, training requirements, inspection programs, and operational control over franchisees, the Corporate Defendants participated in and knowingly benefited from the trafficking venture operating at Motel 6 Lantana.

75. The Corporate Defendants derived direct financial benefit from the trafficking venture through franchise royalties, brand licensing fees, reservation system revenues, and other payments calculated in part from room rentals generated at Motel 6 Lantana, including rentals associated with the trafficking activity described herein.

76. At the time of the events described herein, the Corporate Defendants knew or, at minimum, should have known that sex trafficking was a widespread and well-documented problem occurring within the hotel industry, particularly at economy and roadside hotels similar to Motel 6 properties.

77. At the time of the events described herein, the Corporate Defendants were aware through industry reports, civil litigation, law-enforcement advisories, and widely publicized anti-trafficking initiatives that sex trafficking frequently occurs in hotel properties, including economy hotels similar to Motel 6 locations.

78. Despite possessing this knowledge and maintaining the contractual authority to require anti-trafficking training, implement reporting protocols, and enforce operational safeguards at franchised properties, the Corporate Defendants failed to implement or enforce adequate policies designed to detect and prevent trafficking activity at Motel 6 Lantana.

79. Prior to and during the relevant period, public reporting, law enforcement advisories, civil litigation, and industry guidance repeatedly warned hotel operators and franchisors that traffickers routinely used hotel rooms to facilitate commercial sexual exploitation and that identifiable indicators, such as repeated short stays, cash payments, excessive male foot traffic, visible injuries, and distressed occupants, were common signs of trafficking.

80. Despite this industry knowledge and their ability to impose uniform training, monitoring, and prevention measures, the Corporate Defendants failed to implement adequate anti-trafficking policies, staff training, reporting protocols, or enforcement mechanisms sufficient to detect or prevent trafficking activity at Motel 6 Lantana.

81. The trafficking indicators described in Sections D and E were consistent with widely recognized warning signs of sex trafficking and occurred repeatedly over an extended period, such that the Corporate Defendants, exercising reasonable oversight of their branded property, knew or should have known that a trafficking venture was operating at Motel 6 Lantana.

82. Nevertheless, the Corporate Defendants continued to permit the property to operate under the Motel 6 brand and continued to receive financial benefit from room rentals generated by the trafficking activity described herein.

**G. Plaintiff's Injuries and Damages**

83. As a direct and proximate result of the trafficking venture and Defendants' conduct and omissions described herein, Plaintiff suffered severe physical, psychological, emotional, and economic injuries.

84. Plaintiff sustained significant physical injuries as a result of repeated violence inflicted by her trafficker during the period in which she was trafficked at Motel 6 Lantana and other locations. These injuries included, among others, the loss of two front teeth, head and facial trauma, bruising, and other bodily injuries for which Plaintiff was denied timely medical treatment.

85. Plaintiff also suffered a ruptured eardrum that caused temporary hearing loss, as well as additional untreated injuries that resulted in ongoing physical pain and medical complications.

86. Because Plaintiff was controlled by her trafficker and confined to hotel rooms for extended periods, she was prevented from seeking medical care, which exacerbated the severity and long-term effects of her injuries.

87. Plaintiff suffered profound psychological and emotional trauma, including symptoms consistent with post-traumatic stress disorder, anxiety, depression, fear, shame, and emotional distress arising from prolonged coercion, violence, and sexual exploitation.

88. Plaintiff continues to experience psychological effects including hypervigilance, sleep disturbance, difficulty trusting others, and emotional trauma that interfere with her daily functioning and personal relationships.

89. Plaintiff continues to receive trauma-informed therapy from a counselor specializing in the treatment of trafficking survivors and experiences ongoing psychological effects, including difficulty forming and maintaining personal relationships, as well as emotional triggers encountered in workplace and daily life settings.

90. As a result of the trafficking, Plaintiff lost stable housing, employment opportunities, and financial security, and incurred economic losses, including medical expenses, therapy costs, and lost earning capacity.

91. Plaintiff also suffered loss of personal liberty, dignity, and enjoyment of life during the period she was subjected to forced commercial sexual exploitation.

92. Plaintiff continues to require medical care, psychological counseling, and supportive services to address the lasting effects of the trauma she endured.

93. Plaintiff's injuries and damages were a foreseeable and direct consequence of Defendants' knowing participation in and financial benefit from the trafficking venture conducted at Motel 6 Lantana.

94. Defendants' failures to intervene, report, investigate, or implement reasonable anti-trafficking safeguards materially enabled the trafficking venture to continue operating at Motel 6 Lantana and allowed Plaintiff's trafficker to repeatedly use the property to carry out commercial sexual exploitation. The continued availability of hotel rooms, combined with Defendants' failure to disrupt or report the ongoing criminal activity despite obvious indicators, made the exploitation of Plaintiff both foreseeable and substantially certain to continue.

## CAUSES OF ACTION

### COUNT I - VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT – BENEFICIARY LIABILITY 18 U.S.C. § 1595(a)

*(Against All Defendants)*

95. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 93 to the extent relevant to this Count.

96. Plaintiff was a victim of sex trafficking in violation of 18 U.S.C. § 1591 in that she was recruited, harbored, transported, provided, obtained, and maintained by her trafficker for the purpose of engaging in commercial sex acts through force, fraud, and coercion.

97. Defendant trafficker's conduct constituted a "venture" within the meaning of 18 U.S.C. §§ 1591 and 1595, the purpose of which was to profit from the commercial sexual exploitation of Plaintiff.

98. Defendants knowingly benefited, financially and by receiving things of value, in association with and for the benefit of the trafficking venture, by renting rooms and providing lodging accommodations used to facilitate Plaintiff's trafficking and exploitation.

99. Defendants' financial benefits included, but were not limited to, payments for room rentals, increased occupancy, and revenue generated during the periods in which Plaintiff was trafficked at Motel 6 Lantana.

100. Defendants participated in the trafficking venture by providing and repeatedly renting rooms used for commercial sex acts, permitting rentals designed to conceal the trafficker's identity, failing to enforce reasonable guest-registration policies, and allowing trafficking activity to continue despite repeated and obvious warning signs.

101. By repeatedly renting rooms used for commercial sex activity, permitting irregular guest-registration practices designed to conceal the trafficker's identity, and

failing to intervene despite obvious trafficking indicators, Defendants assisted, supported, and facilitated the trafficking venture operating on their premises.

102. Defendants' provision of lodging, operational services, and access to hotel facilities was essential to the trafficker's ability to carry out the commercial sexual exploitation of Plaintiff, and therefore constituted participation in the trafficking venture within the meaning of 18 U.S.C. §§ 1591 and 1595.

103. As described herein, Defendants knew or, at minimum, should have known that Plaintiff's trafficker was engaged in sex trafficking based upon numerous observable indicators, including:

a) repeated short-term room rentals and cash payments;
b) excessive male foot traffic to and from rooms at all hours;
c) visible signs of physical abuse, distress, and intoxication;
d) confrontational incidents and physical altercations observed by hotel personnel;
e) interactions between staff, security personnel, and Plaintiff's trafficker demonstrating awareness of ongoing misconduct; and
f) other circumstances consistent with widely recognized indicators of sex trafficking within the hotel industry.

104. Despite these indicators, Defendants failed to take reasonable steps to prevent or disrupt the trafficking venture, failed to report suspected criminal activity, and continued to provide lodging services that enabled Plaintiff's exploitation to persist.

105. Defendants' conduct constituted knowing participation in and knowing benefit from a venture that they knew or should have known engaged in acts in violation of 18 U.S.C. § 1591.

106. As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1595(a), Plaintiff suffered physical injury, emotional distress, psychological trauma, economic losses, and other compensable damages.

107. Defendants' conduct was undertaken with reckless disregard for and conscious indifference to the rights and safety of Plaintiff despite numerous and obvious indicators that she was being trafficked on their premises. By knowingly continuing to profit from room rentals associated with Plaintiff's exploitation while failing to intervene or implement reasonable safeguards, Defendants engaged in willful and wanton conduct warranting the imposition of punitive damages.

108. Pursuant to 18 U.S.C. § 1595(a), Plaintiff is entitled to recover compensatory damages, punitive damages, reasonable attorneys' fees, and costs.

**COUNT II - NEGLIGENCE - PREMISES LIABILITY /NEGLIGENT FAILURE TO PREVENT FORESEEABLE CRIMINAL CONDUCT**

***(Against All Defendants)***

109. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 93 to the extent relevant to this Count.

110. At all relevant times, Defendants owned, operated, managed, controlled, maintained, or exercised operational control over the Motel 6 Lantana property.

111. As owners, operators, and controllers of a place of public lodging, Defendants owed lawful guests and invitees, including Plaintiff, a duty to maintain the premises in a reasonably safe condition and to take reasonable measures to protect guests from foreseeable criminal conduct.

112. Defendants knew or should have known that criminal activity, including commercial sexual exploitation and related violence, was a foreseeable risk at the property based upon repeated observable conduct occurring on the premises, including excessive visitor traffic, cash-based short-term rentals, visible altercations, and distressed occupants.

113. Defendants further knew or should have known that hotels of the type and location operated by Defendants are commonly used to facilitate criminal activity, including human trafficking, requiring reasonable monitoring, training, and intervention measures to protect guests from harm.

114. Despite this foreseeable risk, Defendants breached their duty of reasonable care by, among other things:

a) failing to implement reasonable policies and procedures to detect and prevent criminal activity on the premises;

b) failing to adequately train employees and security personnel to recognize and respond to signs of trafficking and guest endangerment;

c) permitting repeated suspicious room rentals and excessive visitor traffic without investigation;

d) failing to conduct welfare checks or intervene when visible signs of abuse and distress were observed;

e) failing to notify law enforcement or otherwise respond to ongoing criminal activity occurring at the property; and

f) failing to enforce reasonable safety and guest-registration practices designed to deter unlawful conduct.

115. Defendants' negligence created and allowed a dangerous environment in which Plaintiff was exposed to ongoing violence, coercion, and exploitation while on the premises.

116. As a direct and proximate result of Defendants' breaches of duty, Plaintiff suffered physical injury, psychological trauma, emotional distress, loss of dignity and liberty, and economic damages as described herein.

117. The criminal conduct perpetrated against Plaintiff was reasonably foreseeable and was not a superseding cause relieving Defendants of liability because Defendants' failures materially increased the risk of harm and allowed the conduct to continue.

118. Plaintiff has suffered damages in an amount to be determined at trial.

**COUNT III - NEGLIGENCE - NEGLIGENT UNDERTAKING**
**(VOLUNTARY ASSUMPTION OF DUTY)**
***(Against All Defendants)***

119. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 93 to the extent relevant to this Count.

120. Defendants voluntarily undertook to provide safety, security, supervision, and operational standards at Motel 6 Lantana through the implementation of brand policies,

employee training programs, security procedures, inspection protocols, and guest-safety practices intended to protect individuals on the premises from harm.

121. Defendants represented, through corporate policies, operational standards, and the provision of on-site personnel, that the property would be monitored and operated in a manner reasonably designed to promote guest safety and deter criminal activity.

122. Having undertaken these responsibilities, Defendants owed a duty to exercise reasonable care in the performance of those safety and security functions.

123. Defendants breached that duty by negligently performing the safety and security measures they undertook, including by failing to adequately train staff, failing to respond to obvious indicators of trafficking, failing to enforce safety policies, and failing to intervene despite repeated warning signs of ongoing criminal conduct.

124. Defendants' negligent performance of these undertaken duties increased the risk of harm to Plaintiff and allowed the trafficking venture to continue on the premises.

125. Plaintiff and other guests relied upon the presence of hotel staff, security personnel, and operational safety policies intended to protect guests from foreseeable criminal conduct.

126. As a direct and proximate result of Defendants' negligent undertaking, Plaintiff suffered the injuries and damages described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff GLORIA J. COLLAZO respectfully requests that this Court enter judgment in her favor and against Defendants, jointly and severally where permitted by law, and award the following relief:

A. Compensatory damages in an amount to be determined at trial for physical injury, emotional distress, psychological trauma, loss of liberty, loss of dignity, economic losses, and all other damages permitted by law;

B. Punitive and exemplary damages to the fullest extent permitted by applicable law to punish Defendants' conduct and deter similar misconduct in the future;

C. Reasonable attorneys' fees, litigation expenses, and costs pursuant to 18 U.S.C. § 1595 and all other applicable provisions of law;

D. Pre-judgment and post-judgment interest as allowed by law;

E. Equitable and injunctive relief as the Court deems just and proper, including such relief as may be necessary to prevent similar conduct in the future;

F. Such other and further relief as the Court deems just, proper, and equitable under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable as a matter of right.

Dated: March 16, 2026

Respectfully Submitted,
**THE LAW OFFICES OF TRAVIS R. WALKER, P.A**
By: /s/Travis R. Walker
Travis R. Walker Esq.
Florida Bar No. 36693
1100 SE Federal Highway
Stuart, Florida 34994
Telephone: (772) 708-0952
travis@traviswalkerlaw.com
service@traviswalkerlaw.com
*Counsel for Plaintiff*